<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORENZO FLORENTINO DELGADO DIAZ, | |
| Petitioner, | Civil Action No. 11-4029 (SRC) |
| v. | |
| WAYNE MULLER et al., | **OPINION** |
| Respondents. | |

**<u>CHESLER</u>, U.S.D.J.**

This matter comes before the Court upon the Petition by Petitioner Lorenzo Florentino Delgado Diaz ("Diaz") for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, challenging his continued detention by the United States Immigration and Customs Enforcement ("ICE") as unlawful and unconstitutional.  Diaz is currently in custody at the Hudson County Correctional Facility in New Jersey.  He filed the instant Petition on June 10, 2011 naming several Respondents, specifically Oscar Aviles, the warden of the facility where Diaz is detained; Eric H. Holder, Attorney General of the United States; Janet Napolitano, Secretary of the Department of Homeland Security; Christopher Shanahan, a Field Office Director with the Office of Detention and Removal; and Wayne Muller and William Joyce, both Assistant Field Office Directors with the Office of Detention and Removal (collectively, "Respondents").  Diaz filed the Petition in the United States District Court for the Southern District of New York.  Respondents filed opposition arguing, *inter alia*, that the Court should transfer the Petition to the District of New

Jersey, where Diaz was detained.  On July 7, 2011, the Court transferred the case to the District of New Jersey.

In brief, Diaz is a lawful permanent resident of the United States who immigrated from the Dominican Republic in 1993.  In 2005, he entered a plea of guilty to the offense of sexual abuse of a minor, New York Penal Law § 130.60(2), and was sentenced to three years of probation.  On or about October 6, 2010, Respondents detained Diaz, and he was placed in removal proceedings.  Through counsel, Diaz requested release on bond, and this request was denied.  He continues to be detained to date.  On July 26, 2011, this Court held oral argument on this Petition.

Diaz argues that his continued detention "is unlawful because he was not taken into the Respondents' custody immediately upon release from incarceration."  (Pet. Br. 1.)  The dispute here concerns the interpretation of this section of 8 U.S.C. § 1226 ("Apprehension and detention of aliens"):

> (c) Detention of criminal aliens.
>   (1) Custody. The Attorney General shall take into custody any alien who–
> . . .
>    (B) is deportable by reason of having committed [certain] offense[s] . . .
> . . .
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

There is no dispute that Diaz committed a predicate offense.  Rather, the parties dispute the meaning of the phrase "when the alien is released."  Diaz argues that this phrase means that the Attorney General is authorized to detain an individual <u>only</u> at the time that he is released and at no other time.  Respondents argue that this phrase means that the Attorney General is authorized

to detain an individual at any time after he is released.

Diaz contends that the majority of district courts that have considered this issue have followed the interpretation he advocates. The problem with some of this persuasive authority is that the provision at issue was enacted by Congress on September 30, 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which became generally effective on April 1, 1997. Almodiel v. INS, 13 Fed. Appx. 659 (9th Cir. 2001). Thus, cases which deal with offenses that occurred prior to the effective date are inapposite.

In more recent cases, a number of district courts have recognized that the statutory language is ambiguous and can reasonably be read in ways that support both Petitioner's and Respondents' interpretations. This is well-explained by Judge Castel in Sulayao v. Shanahan, 2009 U.S. Dist. LEXIS 86497, *8-*19 (S.D.N.Y. Sept. 14, 2009), and this Court concurs with Judge Castel's analysis of this issue, as well as his ultimate conclusion that the interpretation of the Board of Immigration Appeals is entitled to Chevron deference.[1]  See also Sidorov v. Sabol, No. 09-1868 (M.D.Pa. filed Dec. 18, 2009) (same); Gomez v. Napolitano, 2011 U.S. Dist. LEXIS 58667 (S.D.N.Y. May 31, 2011) (same). The interpretation of the Board of Immigration appeals in Rojas is the one advocated by Respondents here.

Petitioner argues that Rojas was wrongly decided. Diaz fails to recognize, however, the standard that must be met to reject the BIA's interpretation:

---

[1] In Matter of Rojas, 23 I. & N. Dec. 117, 124 (2001)., the BIA examined the precise question of statutory interpretation at issue here and concluded: "the groups of criminal aliens subject to mandatory detention were not affected by the timing of their release from criminal custody or the timing of the Service's acquisition of custody." As that court explained, "Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens." Id. at 122.

3

> If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 845 (1984) (quoting United States v. Shimer, 367 U.S. 374, 382, 383 (1961)).  Petitioner has not persuaded this Court that the BIA's interpretation is not one that Congress would have sanctioned.  To the contrary, it appears to this Court that the BIA's interpretation is the one that Congress would have approved.

While fully respecting the courts that have decided otherwise, this Court does not concur that the statutory language is unambiguous and amenable to only one interpretation.  Nor does this Court perceive that the statutory language necessarily imposes a temporal requirement such that detention must occur immediately upon the alien's release.  Rather, it appears that the language could also be plausibly interpreted to simply set forth the conditions upon which the appropriate federal authorities would be authorized to detain an alien.  Indeed, given the purpose of the statute, one does not see any particularly compelling argument that an alien who is not detained until a week or two after his release from custody has become less dangerous to society or poses less of a risk than one who is immediately transferred to federal custody.

It is on this point that Petitioner's position is weakest: this Court questions on what basis one could argue that Congress, when seeking to authorize the detention of criminal aliens so that they might be deported, would have intended that criminal aliens not immediately detained should then not ever be detained.  What would be the rationale for such a policy choice?  Petitioner has certainly not pointed to any.  Would Congress have wanted to insert a loophole so that some lucky criminal aliens could escape deportation and remain in our society?  This Court

thinks not.

The fact that courts have disagreed so in interpreting the statutory language supports the conclusion that it is ambiguous. And, having discerned this ambiguity, it is difficult to think of a possible policy rationale that might motivate Congress to allow criminal aliens to escape deportation in the absence of immediate government action to detain them.

This view gains support from the Supreme Court's observation, on the subject of the legislative policy goals of § 1226(c), that "Congress [was] justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." Demore v. Hyung Joon Kim, 538 U.S. 510, 513 (2003). Would such concerns be lessened by allowing some such aliens to remain at large, giving them more opportunity to engage in crime? The Supreme Court explained that, in enacting § 1226(c), Congress was alarmed by the "wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." Id. at 518. The Court then stated: "Congress also had before it evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation." Id. at 519. Moreover, § 1226(c) "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528. This Court thus finds Petitioner arguing for a statutory interpretation that, if adopted, would work to undo what, according to the Supreme Court, Congress was trying to accomplish when it enacted 8 U.S.C. § 1226(c).

This Court concludes that the detention of Diaz is lawful under 8 U.S.C. § 1226.

Diaz also argues that the length of his detention, without a bond hearing, violates his

constitutionally-protected right to due process of law. Petitioner contends that the detention, ongoing for over nine months now, is a "per-se [sic] violation of his constitutional rights." (Pet.'s Br. 14.) Yet Diaz cites no controlling authority in support of the proposition that detention for nine months is a *per se* violation of the right to due process of law.

The key case on this question is Demore, in which the Supreme Court considered the question of the constitutionality of detention pursuant to § 1226(c), in view of the right to due process of law. In so doing, the Court discussed the issue in terms of the possible length of the detention. It is true that the Court stated that it held that detention of aliens was constitutionally permissible "for the brief period necessary for their removal proceedings." Demore, 538 U.S. at 513. It is also true that the Court stated that most § 1226(c) removal proceedings are resolved in an average time of 47 days – so the Court was not considering those cases in which, as here, detention lasted nine months. Id. at 529. Yet this is far from establishing the bright line rule that Petitioner claims.

Demore might conceivably justify a challenge to the constitutionality of Petitioner's detention, based on its duration, were Respondents responsible for the extent of that duration – but they do not bear that responsibility in this case. Rather, as Petitioner conceded at the hearing, it is Petitioner who has requested numerous continuances which have delayed his detention. In response to this Court's Order, Respondents submitted the declaration of Immigration Court Administrator Regina Rau, who stated that the Immigration Court's records show that, on five occasions, continuances were granted at Petitioner's request to allow him more time to prepare his case. (Rau Decl. ¶¶ 4-10.) There is also no dispute that two months of detention were spent outside of federal custody, while Petitioner challenged his conviction in New York state court.

Furthermore – and even more to the point – Petitioner conceded at the hearing that he actually does not want the Immigration Court to speed up his removal proceedings. Petitioner admitted that, were the Immigration Court to act more speedily, he would seek delay, because he wants more time to appeal his state court conviction.

Petitioner argues that this Court should determine the constitutionality of the duration of his detention without excluding the time spent by Petitioner contesting his state court conviction, and cites in support the Sixth Circuit's decision in Hoang Minh Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003), as well as a trial court case which cited Ly, Oyedeji v. Ashcroft, 332 F. Supp. 2d 747, 753 (M.D. 2004). Ly does not help Petitioner in this matter, as it stands only for the unremarkable proposition that, even when a petitioner bears responsibility for some delay, "the INS must still act promptly in advancing its interests." Ly, 351 F.3d at 272. Thus, the Sixth Circuit stated:

> The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

Id. Petitioner here has failed to persuade this Court that ICE has dragged its heels indefinitely.

As for Oyedeji, while this Court has great respect for Judge Vanaskie, it disagrees with the proposition that the period of detention that follows from an alien's pursuit of available legal remedies is effectively a punishment that invades the right to due process of law. As respondents contend, the majority of courts appear to agree with Andreenko v. Holder, 2010 U.S. Dist. LEXIS 74039 (S.D.N.Y. June 25, 2010) ("where delay is not attributable to the government, such prolonged detention does not necessarily violate due process.") Petitioner has made no showing

that there has been a substantial delay attributable to the government.

Petitioner cannot substantially prolong proceedings in Immigration Court and then complain that his constitutional rights have been violated because of the length of the ensuing detention.  The Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, challenging Diaz' continued detention by ICE, will be denied.

   s/ Stanley R. Chesler   <br>
Stanley R. Chesler, U.S.D.J.

Dated: August 3, 2011